UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
CALIFORNIA VALLEY MIWOK TRIBE,      )
et al.,                             )
                                    )
          Plaintiffs,               )
                                    )
     v.                             )    Civil Action No. 11-160 (RWR)
                                    )
KEN SALAZAR, et al.,                )
                                    )
          Defendants.               )
_____    )

MEMORANDUM OPINION AND ORDER

     This matter is a dispute over the U.S. Department of the
Interior's determination of the legitimate government and
membership of the California Valley Miwok Tribe ("Tribe"), a
federally recognized Indian tribe.  Defendants are Secretary of
the Interior Ken Salazar, Assistant Secretary for Indian Affairs
Larry Echo Hawk, and Director of the Bureau of Indian Affairs
Michael Black.  Plaintiffs Yakima Dixie, Velma WhiteBear, Antonia
Lopez, Michael Mendibles, Evelyn Wilson, and Antoine Azevedo
bring suit individually and on behalf of the Tribe and its Tribal
Council, arguing that the defendants' decision to recognize a
General Council led by Sylvia Burley as the legitimate government
of the Tribe, and to discontinue efforts to adjudicate the status
of other putative tribal members, constituted arbitrary and
capricious agency action, in violation of the Administrative
Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), and also violated
due process and the Indian Civil Rights Act ("ICRA"), 25 U.S.C.

§ 1301, *et seq.*  Another group representing the Tribe, as
organized in the form of the General Council, moves to intervene
as a defendant in this action for the limited purpose of filing a
motion to dismiss, arguing that intervention is necessary to
protect its fundamental interests in defending its sovereignty
and defining its citizenship.[1]  Because the proposed intervenor
satisfies the requirements for intervention as of right under
Federal Rule of Civil Procedure 24(a)(2), the motion to intervene
will be granted.[2]

### BACKGROUND

The leadership and membership of the California Valley Miwok
Tribe have been in dispute for over a decade.  The Federally
Recognized Indian Tribe List Act of 1994, Pub. L. 103-454,
included the California Valley Miwok Tribe as a federally
recognized tribe.  In 1998, the Department of the Interior's
Bureau of Indian Affairs ("Bureau") initiated efforts to
facilitate reorganizing the Tribe under the Indian Reorganization
Act of 1934 ("IRA"), 25 U.S.C. §§ 461-479.  A tribe whose
government is organized according to the IRA's procedural and
substantive requirements qualifies for certain federal benefits

---

[1] Both the plaintiffs and the proposed intervenor use the
name "California Valley Miwok Tribe."  To avoid confusion, the
terms "plaintiffs" and "proposed intervenor" will be used when
discussing the respective parties' positions here.

[2] In light of the decision to grant the motion under Rule
24(a)(2), the parties' arguments regarding permissive
intervention will not be addressed.

- 3 -

and may maintain government-to-government relations with the
United States and with state and local governments.  The Bureau
identified plaintiff Yakima Dixie, then serving as tribal
chairperson, Sylvia Burley, the present leader of the proposed
intervenor, along with several others, as members of the Tribe
who were able to participate in the reorganization (First Am.
Compl., Ex. A., August 31, 2011 letter from Assistant Secretary
of Indian Affairs ("August 31 decision") at 4).  See also
California Valley Miwok Tribe v. United States, 424 F. Supp. 2d
197, 198 (D.D.C. 2006) ("CVMT I") (reviewing Tribe's
reorganization process).  The Bureau recommended that the Tribe
establish a general council form of government for the
organization process.  (August 31 decision at 4.)  Following this
recommendation, the Tribe established the General Council by
resolution in 1998 and began to develop a draft constitution.
(Id.)  Plaintiffs dispute the validity of the resolution,
alleging that it did not receive the approval of the required
number of members.  (First Am. Compl. ¶¶ 43-47.)

     Soon afterwards, leadership disputes between Dixie and
Burley developed within the Tribe.  (August 31 decision at 4;
First Am. Compl. ¶¶ 48-50.)  In 2004, the Bureau declined to
approve a constitution submitted by Burley because she had not
involved the "whole tribal community" in the organizational
process.  (August 31 decision at 4; First Am. Compl. ¶¶ 51-53.)
It also issued a communication stating that it did not view the

- 4 -

Tribe as "organized" under the IRA and that it did not recognize anyone as chairperson, though it recognized Burley as a "person of authority" within the Tribe.  (See August 31 decision at 4; First Am. Compl. ¶¶ 54-56.)  See also CVMT I, 424 F. Supp. 2d at 200 (D.D.C. 2006).  In 2005, Burley and her supporters brought the CVMT I suit in the name of the Tribe challenging the Secretary of the Interior's refusal to approve the constitution. (See August 31 decision at 4; First Am. Compl. ¶ 58.)  The D.C. Circuit upheld the district court's finding that the Secretary had the authority to decline to approve the constitution on the grounds that it did not enjoy support from the majority of the tribe's membership.  California Valley Miwok Tribe v. United States, 515 F.3d 1262, 1263 (D.C. Cir. 2008).  During the period of disputed leadership, Dixie and other members of a tribal council endeavored to identify and organize potential members of the tribe.  (First Am. Compl. ¶¶ 65-70.)  The Bureau assisted by publishing a notice seeking genealogies and other information from potential Tribal members, among other efforts to identify individuals entitled to participate in the reorganization process.  (First Am. Compl. ¶¶ 71-74.)  Burley and her supporters did not participate in these activities but challenged the reorganization process through administrative appeals within the Bureau.  (First Am. Compl. ¶¶ 75-77.)

     On December 22, 2010, the Assistant Secretary for Indian Affairs issued a decision, addressing Burley's appeals, in which

- 5 -

it concluded that the Tribe was organized as the General Council under the resolution adopted in 1998 and that the Bureau would cease efforts to facilitate reorganization.  (Compl., Ex. C, December 22, 2010 letter from Assistant Secretary of Indian Affairs.)  The plaintiffs then initiated this action challenging the legality of the decision.  In April of 2011, the Assistant Secretary granted reconsideration and sought briefing from Dixie, Burley, and their respective supporters.  (August 31 decision at 1.)  The Assistant Secretary reinstated his prior decision on August 31, 2011, but stayed its effectiveness pending resolution of this litigation.  (Id. at 8.)  The Assistant Secretary represented that at present, the recognized citizenship of the Tribe consists of Dixie, Burley, Rashel Reznor, Anjelica Paulk, and Tristian Wallace.[3]

The first amended complaint alleges that the Assistant Secretary presented no reasoned explanation for the Bureau's reversal of its previous positions that the Tribe was not yet organized in accordance with the IRA and in support of identifying additional tribal members to participate in reorganization.  The plaintiffs therefore allege that the decision was arbitrary and capricious under the APA, as well as a violation of due process and ICRA.  (First Am. Compl. ¶¶ 90-119.)

---

[3] According to the plaintiffs, "Reznor, Paulk, and Wallace are Burley's daughters and granddaughter, respectively." (First Am. Compl. at 21 n.1.)

- 6 -

The plaintiffs allege that they have been harmed by the Assistant Secretary's action because they have been denied the opportunity to participate in reorganization and governance of the Tribe; they are not and will not be eligible to receive federal health, education and other benefits provided to members of recognized Indian Tribes; and the decision could provide a basis for Burley to divert funds held in trust for the Tribe by the State of California and paid by the California Gambling Control Commission to tribes that do not operate casinos or gaming devices, and to divert federal grant funds. (First Am. Compl. ¶¶ 82-89.) The plaintiffs seek declaratory and injunctive relief including an order vacating the August 31 decision and directing the Assistant Secretary "to establish government-to-government relations only with a Tribal government that reflects the entire Tribal community, including individual Plaintiffs and all other Current Members." (First Am. Compl. at 30.) The plaintiffs also seek an order enjoining the defendants from awarding any federal funds to Burley. (<u>Id.</u>) The defendants have answered the amended complaint.

The proposed intervenor moved to intervene as a defendant in the action for the limited purpose of filing a motion to dismiss for lack of subject matter jurisdiction, for failure to join an indispensable party, and for failure to state a claim.[4]

---

[4] The proposed intervenor's first motion to intervene was fully briefed before the Assistant Secretary granted

- 7 -

The proposed intervenor argues that intervention as of right is warranted because the complaint "involves an attempt to forcibly expand the Tribe's citizen[ship] and alter its relationship with the United States, directly implicating the Tribe's sovereign responsibility to determine its own citizenship and resolve its own internal affairs." (Proposed Intervenor-Defendant's Am. Mot. for Leave to Intervene as Defendant ("Mot. to Intervene") at 3.) The plaintiffs oppose on the grounds that the proposed intervenor fails to demonstrate that its interests are not protected adequately by the federal defendants. (Pls.' Opp'n to Mot. to Intervene ("Pls.' Opp'n") at 3-4.) The federal defendants take no position on the motion to intervene. (Mot. to Intervene at 3 n.2.)

DISCUSSION

Intervention as a matter of right should be granted when the movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless

---

reconsideration of his December 22, 2010 decision. Following reinstatement of that decision, the proposed intervenor filed an amended motion to intervene. This opinion cites to the second round of briefing on intervention. In the amended motion to intervene, the proposed intervenor presents a lengthy recitation of the factual background, as well as arguments going to the merits of the motion to dismiss it intends to file. Because it is not necessary to the resolution of the motion to intervene, these arguments are not addressed.

- 8 -

existing parties adequately represent that interest." Fed. R.
Civ. P. 24(a)(2).  Evaluating Rule 24(a)(2), the D.C. Circuit has
"identified four prerequisites to intervene as of right: '(1) the
application to intervene must be timely; (2) the applicant must
demonstrate a legally protected interest in the action; (3) the
action must threaten to impair that interest; and (4) no party to
the action can be an adequate representative of the applicant's
interests.'"  Karsner v. Lothian, 532 F.3d 876, 885 (D.C. Cir.
2008) (quoting SEC v. Prudential Sec. Inc., 136 F.3d 153, 156
(D.C. Cir. 1998)).  Importantly, "a party seeking to intervene as
of right must demonstrate that it has standing under Article III
of the Constitution."  Fund For Animals, Inc. v. Norton, 322 F.3d
728, 731-32 (D.C. Cir. 2003); see Defenders of Wildlife v.
Jackson, Civil Action No. 10-1915 (RWR), 2012 WL 896141, at *4
(D.D.C. March 18, 2012) (discussing view that Article III
standing and Rule 24(a)(2) interest requirements are additive,
and view that any party who satisfies Rule 24(a) will also meet
Article III's standing requirement).

I.   STANDING

     The plaintiffs do not contest the proposed intervenor's
standing to intervene.  However, this threshold issue will be
addressed since a party's Article III standing is a prerequisite
to subject matter jurisdiction.  See Fund For Animals, Inc., 322
F.3d at 732.  "To establish standing under Article III, a
prospective intervenor -- like any party -- must show: (1)

injury-in-fact, (2) causation, and (3) redressability." Id. at
732-33.  The proposed intervenor easily meets these requirements.
If the plaintiffs prevail in this action, the Assistant
Secretary's August 31 decision will be vacated, the Bureau will
be ordered to cease government-to-government relationships with
the Tribe as organized in the form of the General Council, and
the defendants will be enjoined from awarding any federal funds
to Burley.  These actions are concrete and particularized
injuries to the proposed intervenor's financial resources and
governmental integrity.  The causation prong is satisfied because
the threatened loss of sovereignty and funds is fairly traceable
to the agency action that the plaintiffs seek to compel in the
instant action.  Finally, a decision in the proposed intervenor's
favor would leave the August 31 decision undisturbed and thereby
prevent the injuries from occurring, satisfying the
redressability prong.

II.  RULE 24(a)(2) REQUIREMENTS

    The proposed intervenor also meets each of the four
requirements for intervention as a matter of right.  First, the
proposed intervenor's motion was timely, as it was initially
filed "less than two months after the plaintiffs filed their
complaint and before the defendants filed an answer." Fund For
Animals, Inc., 322 F.3d at 735.  Second, the proposed intervenor
has shown a legally protected interest in the matter since, in
this Circuit, "satisfying constitutional standing requirements

demonstrates the existence of a legally protected interest."

Jones v. Prince George's County, 348 F.3d 1014, 1019 (D.C. Cir.

2003) (citing Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1076

(D.C. Cir. 1998)).  Third, plaintiffs' action "threaten[s] to

impair," Karsner, 532 F.3d at 885, the proposed intervenor's

legally protected interest because resolution of the matter in

the plaintiffs' favor would directly interfere with the

governance of the Tribe as currently recognized and preclude

access to federal funds.  The plaintiffs appear to concede that

the above three requirements are met as they presented no

arguments on these points in their opposition.

The basis of the plaintiffs' opposition to intervention

concerns the fourth requirement, the adequacy of existing

parties' representation of the proposed intervenor's interests.

The proposed intervenor argues that the federal defendants do not

adequately represent its interests since the federal defendants

may make different arguments from those of the proposed

intervenor, the proposed intervenor's stake in the litigation

differs from that of the defendants, the defendants may not

choose to appeal an adverse judgment, and the proposed intervenor

will provide necessary information to the proceedings that the

defendants might neglect.  (Stmt. of P. & A. in Supp. of Proposed

Intervenor-Defendant's Mot. to Intervene ("Proposed Intervenor's

Stmt.") at 22-23.)  The plaintiffs counter that the federal

defendants adequately represent the proposed-intervenor's

- 11 -

interests because both seek the same "ultimate objective," that is, upholding the August 2011 Decision. (Pls.' Opp'n at 3.)

The D.C. Circuit has emphasized repeatedly that the standard to demonstrate inadequacy of representation is lenient. See Fund For Animals, Inc., 322 F.3d at 736 n.7 (concluding that Supreme Court precedent "makes clear that the standard for measuring inadequacy of representation is low"); Dimond v. District of Columbia, 792 F.2d 179, 192 (D.C. Cir. 1986) (describing burden as "not onerous"); United States v. American Tel. & Tel. Co., 642 F.2d 1285, 1293 (D.C. Cir. 1980) (recognizing view that a movant "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee") (internal quotations omitted). In addition, the Circuit has expressed skepticism that United States governmental entities, with their unique obligations to the serve general public, can be found to adequately represent the interests of potential intervenors. See Fund For Animals, Inc., 322 F.3d at 736 & n.9 (collecting cases).

That skepticism is warranted here. The federal defendants' interest in this action is to defend the Assistant Secretary's decision as lawful agency action. By contrast, the proposed intervenor possesses a distinct and weighty interest in protecting its governance structure and its entitlement and access to federal grant monies. Because the federal defendants do not share these concerns, their defense of this action may not

adequately represent the proposed intervenor's interests.  See
Hardin v. Jackson, 600 F. Supp. 2d 13, 16 (D.D.C. 2009) ("The
D.C. Circuit has frequently found 'inadequacy of governmental
representation' when the government has no financial stake in the
outcome of the suit.") (quoting Dimond, 792 F.2d at 192).[5]

The purpose for which the proposed intervenor seeks to
participate in the case reflects the proposed intervenor's
distinct aim of asserting its sovereign interests.  The federal
defendants, and the plaintiffs, anticipate that the case may be
resolved on cross-motions for summary judgment and the
administrative record.  (See Joint Mot. for Briefing Schedule.)
The proposed intervenor, however, seeks intervention for the
limited purpose of moving to dismiss on several grounds,
including lack of jurisdiction to adjudicate internal tribal
disputes and failure to state a claim, a tactic the federal

---

[5] Plaintiffs propose a different standard employed in the
Ninth Circuit according to which "[w]here the party and the
proposed intervenor share the same ultimate objective, a
presumption of adequacy of representation applies, and the
intervenor can rebut that presumption only with a compelling
showing to the contrary."  Perry v. Proposition 8 Official
Proponents, 587 F.3d 947, 951 (9th Cir. 2009) (internal
quotations omitted).  The D.C. Circuit has not endorsed this
articulation of the intervention standard, and cases in the
Circuit have been "inconsistent as to who bears the burden with
respect to [the adequacy of representation] factor."  Fund For
Animals, Inc., 322 F.3d at 736 n.7.  Although both defendants and
the proposed intervenor oppose invalidating the August 31
decision, they do so for different reasons and their respective
stakes in the matter differ greatly.  The standard for finding
inadequate representation here is satisfied regardless of who
bears the burden.

defendants have not pursued.  <u>See</u> Proposed Intervenor-Defendant's
Reply to Pls.' Opp'n ("Proposed Intervenor-Defendant's Reply") at
7 (asserting that defendants' representation is demonstrably not
adequate because "[s]trong grounds exist for dismissal of
Plaintiffs' Amended Complaint on Rule 12(b)(1) and Rule 12(b)(6)
grounds, but the United States failed to seek such a dismissal").
The plaintiffs argue that the choice of a "different procedural
mechanism for seeking judicial affirmance of the agency decision
does not mean that the government is not adequately representing
the prospective intervenor's interests." (Pls.' Opp'n at 4.)

A difference in litigation strategies does not always
demonstrate an insufficiently coterminous relationship between a
potential intervenor and an existing party.  Here, however, the
divergence highlights that the proposed intervenor's
conceptualization of the action, as an internal tribal dispute
not amenable to resolution in a federal judicial forum, is not
shared by the defendants.  In an important regard, then, the
proposed-intervenor does not seek "judicial affirmance" that the
agency decision was not arbitrary and capricious or otherwise
unlawful; it seeks to persuade "this Court to refrain from
presiding over a procedurally defective Amended Complaint and
rendering a ruling on the merits in an action over which it lacks
jurisdiction." (Proposed Intervenor-Defendant's Reply at 3.)  For
the foregoing reasons, the defendants do not adequately represent
the proposed intervenor's interest in protecting its current

- 14 -

governmental structure and its ability to define its membership independently.

<u>CONCLUSION AND ORDER</u>

Because all four requirements of Rule 24(a)(2) are met, the proposed intervenor is entitled to intervention as of right.  The plaintiffs ask that, if intervention is granted, the filing of the motion to dismiss be coordinated with the briefing and resolution of the parties' cross motions for summary judgment. (Pls.' Opp'n at 5.)  Accordingly, it is hereby

ORDERED that the proposed intervenor-defendant's amended motion [35] for leave to intervene as defendant be, and hereby is, GRANTED.  The Clerk's Office is directed to docket Exhibits 3 through 7 to the proposed intervenor-defendant's amended motion for leave to intervene as the intervenor-defendant's motion to dismiss the plaintiffs' first amended complaint.  It is further

ORDERED that the proposed intervenor-defendant's motion [36] to expedite consideration of its motion for leave to intervene be, and hereby is, GRANTED.  It is further

ORDERED that the parties' joint motion [41] to extend time for plaintiffs to request supplementation of the administrative record be, and hereby is, GRANTED nunc pro tunc.  It is further

ORDERED that the parties' amended joint motion for briefing schedule [47] for cross motions for summary judgment be, and hereby is, GRANTED nunc pro tunc, and the parties' joint motion

- 15 -

[38] for briefing schedule for cross motions for summary judgment be, and hereby is, DENIED as moot.  It is further

ORDERED that the parties and the intervenor shall meet and confer and file by April 4, 2012 a joint status report and proposed order reflecting deadlines for opposing and replying in support of the intervenor's motion to dismiss and proposing any necessary amendments to the briefing schedule for cross motions for summary judgment.

SIGNED this 26th day of March, 2012.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge