| | |
|---|---|
| **CALIFORNIA VALLEY MIWOK TRIBE et al.,**<br><br>    **Plaintiffs,**<br><br>    v.<br><br>**KEN SALAZAR, Secretary,**<br>**United States Department of the Interior, et al.,**<br><br>    **Defendants,**<br><br>**and,**<br><br>**CALIFORNIA VALLEY MIWOK TRIBE**<br><br>    **Intervenor-Defendant** | **Civil Action No. 11-00160 (BJR)**<br><br>**MEMORANDUM OPINION GRANTING INTERVENOR-DEFENDANT'S MOTION TO JOIN A REQUIRED PARTY AND GRANTING IN PART AND DENYING IN PART INTERVENOR-DEFENDANT'S MOTION TO DISMISS** |

This matter is before the Court on Intervenor-Defendant's motion to dismiss for lack of subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, Fed. R. Civ. P. 12(b)(6). *See* Motion to Dismiss Plaintiffs' First Amended Complaint for Declaratory and Injunctive Relief ("Mot."), Dkt. No. 58, at 2 (Mar. 26, 2012). Intervenor-Defendant also argues that it is a required party but that its joinder is precluded by sovereign immunity, *id.* at 21; for clarity the Court will construe this argument as a motion to join a required party under Federal Rule of Civil Procedure 19(a)(2). Because the Court agrees that Intervenor-Defendant is a required party but not that its joinder is precluded by sovereign immunity, the motion to join a required party is GRANTED. Because the Court finds Intervenor-Defendant's remaining arguments to be largely — but not entirely — without merit, the motion to dismiss is GRANTED in part and DENIED in part.

I. BACKGROUND

This is the latest volley in a long and bitter contest for control over the California Valley Miwok Tribe ("Tribe"), a federally recognized tribe. Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 78 Fed. Reg. 26,384, 26,385 (May 6, 2013). Plaintiffs are alleged Tribe members led by Yakima Dixie; the Intervenor-Defendant is a rival group led by Silvia Burley. For years each faction has attempted to organize its own tribal government and win recognition from the federal government; in this litigation, accordingly, both style themselves the "California Valley Miwok Tribe." To avoid confusion the Court will refer to Plaintiffs as the "Dixie faction" and to Intervenor-Defendant as the "Burley faction." The Dixie faction seeks to set aside a decision of the Secretary of the Interior[1] ("Secretary") recognizing a tribal government controlled by the Burley faction. *See* Letter from Larry Echo Hawk, Assistant Secretary – Indian Affairs, to Silvia Burley and Yakima Dixie ("Decision Letter"), Administrative Record ("A.R.") at 2049 (Aug. 31, 2011).

At stake is not only the prestige of leadership but also the authority to manage, on behalf of the Tribe, considerable state and federal largesse. As a California tribe without a gambling operation, the Tribe is entitled to receive $1.1 million per year under a California revenue-sharing compact. *California Valley Miwok Tribe v. Superior Court of San Diego County*, No. D061811, 2012 WL 6584030 at *2 (Cal. Ct. App. Dec. 18, 2012). Since 2005 the California Gambling Control Commission has held these funds in trust pending resolution of the leadership dispute; by the end of 2011 the trust funds had grown to over $7.6 million. *Id*. The tribal

---

[1] The court will refer to all final decisions of the Assistant Secretary — Indian Affairs and his subordinates as decisions of the Secretary of the Interior. Although the Secretary has delegated his authority to the Assistant Secretary, *see* 209 Department of the Interior Departmental Manual 8.1 (Apr. 21, 2003), ultimate responsibility for "the management of all Indian affairs and of all matters arising out of Indian relations" resides in the Secretary, 25 U.S.C. § 2.

government that wins federal recognition will likely control the $7.6 million held in trust, the $1.1 million annual payout, and any grants the federal government may bestow. *See* Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 450h(a)(1) ("The Secretary of the Interior is authorized, upon the request of any Indian tribe ... to contract with or make a grant ... to any tribal organization for the strengthening or improvement of tribal government"); *California Valley Miwok Tribe v. United States*, 424 F. Supp. 2d 197, 203 n.7 (D.D.C. 2006) (*CVMT I*) ("The Tribe received approximately $400,000 in federal funds [in 2005]").

Prior to the decision on review, the federal government recognized a tribal government only if the tribe was "organized" pursuant to Section 476 of the Indian Reorganization Act (IRA), 25 U.S.C. § 476. *See* Decision Letter, A.R. at 2054; Letter from Michael D. Olsen, Acting Assistant Secretary — Indian Affairs, to Yakima Dixie ("Nonrecognition Letter"), A.R. at 610–11 (Feb. 11, 2005). Section 476 provides two ways for a tribe to organize. Under § 476(a), a tribe may "adopt an appropriate constitution and bylaws," which become effective when (1) "ratified by a majority vote of the adult members of the tribe ... at a special election authorized and called by the Secretary" and (2) approved by the Secretary. Alternatively, a tribe may organize pursuant to § 476(h)(1), which provides "each Indian tribe shall retain inherent sovereign power to adopt governing documents under procedures other than those specified in this section." In short, § 476(a) allows a tribe to adopt a constitution according to federal procedures, while § 476(h) allows a tribe to "adopt a constitution using procedures of its own making." *California Valley Miwok Tribe v. United States*, 515 F.3d 1262, 1265 (D.C. Cir. 2008) (*CVMT II*).

As recently as 1997 organization of the Tribe would have been a simple affair, for the

only known member was Yakima Dixie.[2] In 1998, however, Dixie expanded the Tribe by enrolling Silvia Burley, her two daughters, and her granddaughter. Enrollment Letters, A.R. at 111–14 (Aug. 6, 1998). Soon thereafter Dixie and Burley met with representatives from the Bureau of Indian Affairs ("Bureau"), who advised them to set up a General Council as a "stepping stone" to formal organization. Transcription of Videotape of Meeting between Yakima Dixie, Raymond Fry, Brian Golding, and Silvia Burley, A.R. at 145 (Sep. 8, 1998). Dixie and Burley accepted the advice and signed a resolution establishing a "General Council ... consisti[ing] of all members of the Tribe who are at least eighteen years of age" to serve as "the governing body of the Tribe." Resolution # GC-98-01 ("General Council Resolution"), A.R. at 178 (Nov. 5, 1998).

Despite this promising start, relations between Dixie and Burley soon began to sour. Between 2000 and 2004, Burley and her daughters made three failed efforts to organize the Tribe by submitting to the Secretary constitutions they adopted without Dixie's participation; in their 2004 constitution, the Burley faction attempted to cut Dixie out altogether by "conferr[ing] tribal membership upon only them and their descendants." *CVMT I*, 424 F. Supp. 2d at 203 n.7. Dixie now returns the favor by disputing the validity of his enrollment of Burley and her descendants; he also disputes the validity of the General Council Resolution. Plaintiffs' First Amended Complaint ("Compl."), Dkt. No. 32, at ¶¶ 44–47 (Oct. 17, 2011).

The Secretary rejected the Burley faction's 2004 constitution because its organizers had made no effort to seek the "involvement of the whole tribal community," including potential

---

[2] In 1994, Yakima Dixie wrote a letter to the Bureau of Indian Affairs identifying himself as "the only descendant and recognized tribal member of the [Tribe]." Letter from Yakima Dixie to Harold Brafford, Superintendent, Bureau of Indian Affairs, A.R. at 82 (1994). In 1998, Dixie informed the Bureau that he had a brother, Melvin, though Melvin's whereabouts were unknown. Transcription of Videotape of Meeting between Yakima Dixie, Raymond Fry, Brian Golding, and Silvia Burley, A.R. at 127, 130–31 (Sep. 8, 1998).

members of the Tribe living near its Rancheria. Letter from Dale Risling, Sr., Superintendent, Bureau of Indian Affairs, to Silvia Burley, A.R. at 499 (Mar. 26, 2004). The Burley faction brought suit in the district court, arguing that the Tribe had "lawfully organized pursuant to its inherent sovereign authority" and that § 476(h) required the Secretary to approve its constitution. *CVMT I*, 424 F. Supp. 2d at 201. The district court dismissed the suit, *id.* at 203, and the D.C. Circuit affirmed, *CVMT II*, 515 F.3d at 1263. The D.C. Circuit held § 476(h) ambiguous and, in accordance with *Chevron U.S.A. v. Natural Resources Defense Council*, *Inc.*, 467 U.S. 837 (1984), deferred to the Secretary's reasonable determination that "her authority under § 476(h) includes the power to reject a proposed constitution that does not enjoy sufficient support from a tribe's membership." *CVMT II*, 515 F.3d at 1267. The court noted that although the Tribe, "by its own admission, has a potential membership of 250, only Burley and her small group of supporters had a hand in adopting her proposed constitution." *Id.* "This antimajoritarian gambit," the court declared, "deserves no stamp of approval from the Secretary." *Id.*

While litigation over the Burley constitution wound through the courts, Dixie began to identify potential members who might be eligible to participate in organizing the Tribe. Compl. ¶¶ 65–70. The Bureau assisted in these efforts by publishing notices in local newspapers seeking individuals who might be lineal descendants of historic members of the Tribe. *See* Letter from Troy Burdick, Superintendent, Bureau of Indian Affairs, to Silvia Burley and Yakima Dixie, A.R. at 1261 (Nov. 6, 2006); Legal Announcement, A.R. at 1501 (Apr. 11, 2007). Burley filed an administrative appeal of the Bureau's action, whereupon the Bureau explained its purpose was not to "determine who the members of the Tribe will be," but rather to "assist the Tribe in identifying the whole community, the 'putative' group, who would be entitled to participate in the Tribe's efforts to organize a government that will represent the Tribe as a whole." Letter

from Clay Gregory, Regional Director, Bureau of Indian Affairs, to Silvia Burley, A.R. at 1498 (Apr. 2, 2007). Unsatisfied, Burley further appealed to the Interior Board of Indian Appeals ("IBIA"). Notice of Appeal, A.R. at 1502 (Apr. 16, 2007). In the interim the Bureau received 503 applications from individuals claiming lineal descendancy and prepared notification letters to those whose claims it believed valid. Declaration of Troy Burdick, Superintendent, Bureau of Indian Affairs, A.R. at 2105 (Dec. 6, 2007). It did not send the letters, however, pending Burley's appeal.

In December 2010 the Assistant Secretary — Indian Affairs, to whom the IBIA had referred a jurisdictional question, directed the Bureau to cease its efforts to assist the organization of the Tribe because the Tribe was already "organized as a General Council" pursuant to the 1998 General Council Resolution. Letter from Larry Echo Hawk, Assistant Secretary — Indian Affairs, to Silvia Burley, A.R. at 1765 (Dec. 22, 2010). The Dixie faction immediately filed this suit to set aside the decision. In response the Secretary withdrew his decision for reconsideration and requested briefing from both factions. Letter from Larry Echo Hawk, Assistant Secretary — Indian Affairs, to Yakima Dixie and Silvia Burley, A.R. at 2004 (Apr. 8, 2011). In August 2011 the Secretary issued his reconsidered decision. He determined (1) The "citizenship of the [Tribe] consists solely of Yakima Dixie, Silvia Burley," and Burley's three descendants; (2) "Pursuant to the 1998 General Council Resolution, the ... General Council is vested with the governmental authority of the Tribe, and may conduct the full range of government-to-government relations with the United States;" and (3) "Although this current General Council form of government does not render [the Tribe] an 'organized' tribe under the [IRA], as a federally recognized tribe it is not required 'to organize' in accord with the procedures of the IRA." Decision Letter, A.R. at 2049–50. The Secretary acknowledged his

decision "mark[ed] a 180-degree change of course from positions defended by this Department in administrative and judicial proceedings over the past seven years." *Id.*

In October 2011 the Dixie faction amended its complaint to challenge the reconsidered decision of the Secretary. The Dixie faction alleges the Secretary made procedural and substantive errors that amount to violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), the Due Process Clause of the Fifth Amendment to the Constitution of the United States, and the Indian Civil Rights Act (ICRA), 25 U.S.C. § 1302. Compl. ¶ 90–119. The Dixie faction claims it has been injured by the Secretary's decision because each individual plaintiff is in fact a member of the Tribe by lineal descent, Compl. ¶¶ 26, 28. By excluding all the plaintiffs except Yakima Dixie from his determination of the Tribe's current membership, the Dixie faction argues, the Secretary denied the excluded plaintiffs the opportunity to participate in the organization of the Tribe and made them ineligible for federal health, education, and other benefits reserved for members of recognized federal tribes. Compl. ¶¶ 85–86. For relief the Dixie faction requests, among other things, the Court vacate the Secretary's decision and direct the Secretary to "establish government-to-government relations only with a Tribal government that reflects the participation of the entire Tribal community, including individual Plaintiffs and all other Current Members." Compl. at 30.

In March 2012 the Court granted the Burley faction leave to intervene "for the limited purpose of filing a motion to dismiss for lack of subject matter jurisdiction, for failure to join an indispensable party, and for failure to state a claim." Memorandum Opinion and Order, Dkt. No. 52, at 6 (Mar. 26, 2012). That motion is now before the Court.

## II. STANDARD OF REVIEW

In evaluating a motion to dismiss, the Court "must accept as true all material allegations of the complaint, drawing all reasonable inferences from those allegations in plaintiffs' favor, and presuming that general allegations embrace those specific facts that are necessary to support the claim." *LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011) (internal quotation marks, brackets, and citations omitted). In assessing standing, moreover, the Court "must assume that plaintiffs will prevail on the merits of their claims," *City of Jersey City v. Consol. Rail Corp.*, 668 F.3d 741, 744 (D.C. Cir. 2012), and that they will be granted the relief they seek, *In re Thornburgh*, 869 F.2d 1503, 1511 (D.C. Cir. 1989).

## III. DISCUSSION

The Burley faction presents five arguments in its motion to dismiss: (1) the plaintiffs lack standing; (2) the dispute is effectively over tribal membership, a matter over which the court has no jurisdiction; (3) the claims asserted in the complaint are time-barred; (4) the complaint fails to state a claim upon which relief can be granted; and (5) the Tribe, as represented by the Burley faction, is a required party but its joinder is precluded by sovereign immunity. As indicated earlier, the Court will construe the last argument as a motion to join a required party pursuant to Federal Rule of Civil Procedure 19(a)(2).

### 1. Standing

The standing inquiry has two parts, one constitutional and one prudential. Constitutional standing is a jurisdictional doctrine that enforces the "case-or-controversy requirement of Article III," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), while prudential standing is a "judicially self-imposed limit[] on the exercise of federal jurisdiction," *Allen v. Wright*, 468 U.S. 737, 751 (1984). "To secure constitutional standing the plaintiffs must show injury in fact that is

fairly traceable to the defendant's action and redressable by the relief requested. To secure [prudential standing] under the APA, they must show that the injuries they assert fall within the 'zone of interests' of the relevant statute." *Animal Legal Def. Fund, Inc. v. Espy*, 23 F.3d 496, 498–99 (D.C. Cir. 1994). Although the Burley faction challenges only the Dixie faction's constitutional standing in its motion to dismiss,[3] the D.C. Circuit "treats prudential standing as a jurisdictional issue which cannot be waived or conceded." *Ass'n of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 674 (D.C. Cir. 2013) (per curiam) (internal quotation marks omitted). Accordingly, the Court will address the Dixie faction's prudential as well as constitutional standing to bring this suit.

The Dixie faction easily satisfies the requirements for constitutional standing. The individual plaintiffs, Dixie excepted,[4] are injured because they are allegedly members of the Tribe by lineal descent but have been denied the right to participate in the organization and governance of the tribe. *See* Dixie Opp. at 20–21. The injury was caused by the Secretary's determination that Dixie, Burley, and her three descendants "are the only current citizens of the Tribe, and the Tribe's General Council," composed of those same citizens, "is authorized to exercise the Tribe's governmental authority." Decision Letter, A.R. at 2055. Vacating the Secretary's decision would redress the injury by restoring the possibility, if not the certainty, that the excluded plaintiffs could participate in any renewed efforts to organize the Tribe.

---

[3] The Burley faction addressed prudential standing for the first time in its reply, Intervenor-Defendant's Reply in Support of Its Motion to Dismiss Plaintiffs' First Amended Complaint (Related to Docket Nos. 58 and 59) ("Reply to Dixie Opp."), Dkt. No. 63, at 7–13 (Apr. 27, 2012), after the Dixie faction volunteered the issue, Plaintiffs' Memorandum of Points and Authorities in Opposition to Intervenors' Motion to Dismiss ("Dixie Opp."), Dkt. No. 59, at 24–25 (Apr. 20, 2012).

[4] The Court need not address whether Dixie also has standing. *See Newdow v. Roberts*, 603 F.3d 1002, 1008 (D.C. Cir. 2010) ("[O]nce one plaintiff has standing, there is 'no occasion to decide the standing of the other [plaintiffs]'" (quoting *Carey v. Population Servs. Int'l*, 431 U.S. 678, 682 (1977)); *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 783 F.2d 237, 246 n.12 (D.C. Cir. 1986) (similar).

The Burley faction objects on the ground that the excluded plaintiffs "cannot legitimately claim a denial of benefits" because they "never once ... had membership status within this Tribe." Mot. at 11. The Burley faction points out that although the Court must accept as true the plaintiffs' factual allegation that they are lineal descendants of historical members of the Tribe, it need not accept their legal conclusion that they are members of the Tribe. *Id.* at 4. "Being a direct lineal descendant ... does not mean one is entitled to Tribal membership." *Id.* at 5 (internal quotation marks omitted). The Court disagrees. Prior to the decision on review, there was no functioning tribal government to determine membership; in such a circumstance, and for the limited purpose of determining standing, the Court can infer tribal membership from lineal descent.[5]

In any event, the constitutional standing of the excluded plaintiffs does not depend upon their actual membership in the Tribe. Prior to the decision on review, the Bureau sought genealogical evidence from individuals who might be "putative" members of the "whole community" eligible to participate "in the Tribe's efforts to organize a government that will represent the Tribe as a whole." Letter from Clay Gregory, Regional Director, Bureau of Indian Affairs, to Silvia Burley, A.R. at 1498 (Apr. 2, 2007). The Bureau's emphasis upon genealogy implies it would regard a lineal descendant of a historical member of the Tribe a "putative" member eligible to participate in efforts to organize the Tribe. Thus, the excluded plaintiffs have constitutional standing because if, as the court must assume, they are lineal descendants of historic members of the Tribe, and if, as the court must assume, they are granted an order vacating the Secretary's decision, then they will likely be eligible to participate in any renewed

---

[5] Indeed, Burley's own claim to tribal membership rests upon a bare claim of lineal descent: She was enrolled by Dixie, and Dixie claimed, in his first letter to the Bureau, that he was "the only descendant and recognized ... member of the [Tribe]." *See* Letter from Yakima Dixie to Harold Brafford, Superintendent, Bureau of Indian Affairs, A.R. at 82 (1994).

efforts to organize the Tribe.

The excluded plaintiffs have prudential standing for much the same reason. They seek to vindicate their interest in "participat[ing] in the organization of their Tribe's government." Dixie Opp. at 24. That is well within the zone of interests protected by § 476 of the IRA, whose core "purpose was to 'encourage Indians to revitalize their self-government.'" *Feezor v. Babbitt*, 953 F. Supp. 1, 5 (D.D.C. 1996) (quoting *Cheyenne River Sioux Tribe v. Andrus*, 566 F.2d 1085, 1087 (8th Cir. 1977)). Indeed, the D.C. Circuit has all but held the IRA was designed to protect these very plaintiffs: Just five years ago, that court criticized the Burley faction's failure to involve the Tribe's "potential membership of 250" because "organization under the [IRA] must reflect majoritarian values ... [and] tribal governments should fully and fairly involve the tribal members in the proceedings leading to constitutional reform." *California Valley Miwok Tribe v. United States*, 515 F.3d 1262, 1267–68 (D.C. Cir. 2008) (*CVMT II*) (internal quotation marks omitted).

### 2. Intratribal Dispute

The Burley faction next argues the Court lacks jurisdiction because "Plaintiffs' ... grievances pertain[] to their lack of recognition as members of the Tribe," an issue properly characterized "as a Tribal enrollment dispute." Mot. at 15. It is indeed axiomatic that a tribe "retain[s] ... inherent power to determine tribal membership," *Montana v. United States*, 450 U.S. 544, 564 (1981), but the Dixie faction does not complain it has been denied tribal membership by a tribal government. It complains a federal agency has recognized a rogue tribal government in violation of the APA and other federal laws. The Congress has vested this Court with "original jurisdiction of all civil actions arising under the Constitution [and] laws ... of the United States," 28 U.S.C. § 1331, and the Court "ha[s] no more right to decline the exercise of

jurisdiction which is given, than to usurp that which is not given," *Cohens v. Virginia*, 19 U.S. 264, 404 (1821). Even the Secretary concedes that "[w]hatever limitations there may be on the scope of relief that the court can order, vacating the [decision on review] is well within those limitations." Federal Defendants' Memorandum in Opposition to Defendant-Intervenor's Motion to Dismiss ("Fed. Opp."), Dkt No. 60, at 5 n.3 (April 20, 2012); *accord* 5 U.S.C. § 706(2)(A) ("The reviewing court shall hold unlawful and set aside agency action ... found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"); *Goodface v. Grassrope*, 708 F.2d 335, 338 (8th Cir. 1983) ("[T]he district court did have jurisdiction under 28 U.S.C. § 1331 to review, pursuant to the APA, the action taken by the [Bureau] in refusing to recognize either tribal council"). Because the question here is whether the Secretary violated federal law, the Court has jurisdiction over this case.

The Burley faction objects that the Secretary himself characterized his prior position as an unwarranted "intru[sion] into a federally recognized tribe's internal affairs." Mot. at 15 (quoting Decision Letter, A.R. at 2054). As discussed further below, the Burley faction is not entitled to rely upon this rather dubious characterization — the supposedly unwarranted "intrusion," after all, had been upheld by the D.C. Circuit just five years ago — because it appears in the very decision this court has been asked to review. *See Cherokee Nation of Oklahoma v. Babbitt*, 117 F.3d 1489, 1499 (D.C. Cir. 1997) ("[T]he Final Decision ... cannot itself be used to block review"). The Burley faction asks the Court to decline jurisdiction to decide the lawfulness of the Secretary's decision by assuming the decision was lawful. The Court will do no such thing.

### 3. Statute of Limitations

The Burley faction next argues certain of the Dixie faction's claims are time-barred

because they "pertain not to independent determinations of the August 2011 Decision, but, rather, to long-standing [agency] determinations, which were used as the basis for the August 2011 Decision." Mot. at 19. Specifically, the Burley faction argues the Secretary upheld "the Tribe's five member citizenship" and "the authority of the Tribe's governing body[] pursuant to [the General Council Resolution]" in letters issued September 1998, February 2000, and March 2000. Mot. at 19–20. Because the Dixie faction did not challenge these letters within the six-year statute of limitations, the Burley faction argues, its claims are time-barred now. *See* 28 U.S.C. § 2401(a) ("[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues"); *Hardin v. Jackson*, 625 F.3d 739, 743 (D.C. Cir. 2010) ("[A] party challenging final agency action must commence his suit within six years after the right of action accrues and the right of action first accrues on the date of the final agency action" (internal quotation marks omitted)).

The Dixie faction's challenges are timely. Although the February 2000 letter did indicate the Secretary's view that Dixie and the four Burleys are "members of the Tribe," Letter from Dale Risling, Sr., Superintendent, Bureau of Indian Affairs, to Yakima Dixie, A.R. at 235 (Feb. 4, 2000), neither it nor the other letters presaged the Secretary's announcement, in the decision on review, that the "citizenship of the [Tribe] consists *solely* of Yakima Dixie, Silvia Burley," and Burley's three descendants, Decision Letter, A.R. at 2050 (emphasis added). It is true that in February 2000, the Secretary accepted the "General Council ... as the governing body of the Tribe," A.R. at 236, and the Dixie faction could have challenged his determination then. Any such challenge would have been mooted, however, by the Secretary's reversal in February 2005, when he held "the [Bureau] does not recognize any tribal government." Nonrecognition Letter, A.R. at 611. Because the Secretary's decision on review "mark[ed] a 180-degree change of

course" by once again recognizing the General Council as the Tribe's government, the Dixie faction's challenge is timely. Decision Letter, A.R. at 2050.

4. **Failure to State a Claim**

The Burley faction argues the Dixie faction has failed to state a claim under the APA or Due Process Clause because relief would require the Court to "make the Non-Members enrolled members of th[e] Tribe." Mot. at 27. This, they reiterate, the Court cannot do. *Id.* As the Court has already explained, however, it is no intrusion upon tribal sovereignty to set aside the decision of a federal agency if, as the Dixie faction alleges, that decision violates federal law. The Dixie faction's APA and due process claims are not merely cognizable; they are the bread and butter of the Court.

The Dixie faction's ICRA claim is another matter. The Dixie faction alleges the decision on review "violated the ICRA by recognizing a Tribal governing document and governing body that deprive Plaintiffs and other Tribal members of equal protection and due process of law," Compl. at 30, but the ICRA does not operate against the federal government. *See* 25 U.S.C. § 1302(a)(8) ("No *Indian tribe* in exercising powers of self-government shall deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law" (emphasis added)). Instead, the ICRA imposes "restrictions upon tribal governments similar, but not identical, to those contained in the Bill of Rights and the Fourteenth Amendment." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 57 (1978). Because the Dixie faction has not alleged any violation by a tribal government, its ICRA claim must be dismissed.

5. **Required Joinder**

Federal Rule of Civil Procedure 19(a)(l)(B)(i) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if ... that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may ... as a practical matter impair or impede the person's ability to protect the interest.

If a required party can be joined, then "the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2). If a required party cannot be joined, then "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). The Burley faction argues that it is a required party but that sovereign immunity precludes its joinder. Mot. at 21–23. Consequently, the Burley faction argues, the Court must dismiss the suit. Mot. at 23–25.

One aspect of this argument requires immediate clarification. The Burley faction takes as its premise that it is the proper representative of the Tribe: It claims it is a required party on the basis of the Tribe's interests in its "sovereignty" and "established governing structure and membership," Mot. at 22, and it invokes sovereign immunity on behalf of the Tribe. The Court cannot accept the premise of this argument. Prior to the decision on review, the Secretary recognized no government of the Tribe, Nonrecognition Letter, A.R. at 611; the Secretary then changed course by recognizing, in the decision on review, the General Council as the government of the Tribe. The Burley faction's authority to represent the Tribe therefore rests upon its control of the General Council, and, ultimately, the very decision on review. "Because reliance cannot be placed on the [Secretary's] recognition" of the General Council, *Cherokee Nation of Oklahoma v. Babbitt*, 117 F.3d 1489, 1499 (D.C. Cir. 1997), the Court cannot regard the Burley faction as the Tribe or accept its invocation of sovereign immunity. Were the Court to accept the Burley faction's invocation of sovereign immunity on the basis of the challenged decision, "then the [Secretary's] recognition decisions would be unreviewable, contrary to the

presumption in favor of judicial review of agency action." *Id.* at 1499.

The question, then, is not whether joinder of the Burley faction is possible, but whether joinder is necessary. It is. Although the Burley faction is not entitled to defend the sovereign interests of the Tribe, it is certainly entitled to defend its own interest in federal recognition of its favored governmental structure. That interest is pecuniary as well as political: If the decision on review is upheld, then the Burley faction will control the Tribe's federally-recognized government and with it, an immense flow of federal and state funds. Nor can the Burley faction's interest be adequately represented, as the Secretary suggests, by the Secretary's defense of the suit. *See* Fed. Opp. at 7–12. The D.C. Circuit observed in *Cherokee Nation*:

> [A]lthough the Delawares and the Department currently take the same position regarding the Delawares' sovereignty, and to that extent their interests are the same, the Department has twice reversed its position regarding the Delawares since 1940.... [T]he Department may reverse itself again. Moreover, even were the Department vigorously to represent the Delawares ... in the district court, the Department might decide not to appeal any unfavorable decision.

*Id.* at 1497. That this precedent controls this case is self-evident.

### IV.     CONCLUSION

For the foregoing reasons, it is, hereby

1. ORDERED that the Fourth Cause of Action in the First Amended Complaint, Violation of the Indian Civil Rights Act, is DISMISSED. It is further,

2. ORDERED that Intervenor-Defendant's Motion to Dismiss is in all other respects DENIED. It is further,

3. ORDERED that Intervenor-Defendant is dismissed as an intervenor and joined as a party defendant. It is further,

4. ORDERED that Intervenor-Defendant is granted leave to file any additional arguments in support of Federal Defendants' motion for summary judgment. The memorandum must

be filed within 14 days and may not exceed 15 pages. Oppositions must be filed within 10 days of the memorandum and may not exceed 10 pages. No leave is granted to file a reply. It is further,

5. ORDERED that Intervenor-Defendant's Motion to Expedite Consideration of the Motion to Dismiss is DISMISSED as moot.

SO ORDERED.

September 6, 2013

_____
Barbara Jacobs Rothstein
U.S. District Court Judge